UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO:

AT LAW AND IN ADMIRALTY

KIMBERLY CONWAY

     Plaintiff,

vs.

CELEBRITY CRUISES, INC.

     Defendant.

_____/

## COMPLAINT FOR DAMAGES

     The Plaintiff, KIMBERLY CONWAY, hereby sues the Defendant and files this Complaint for Damages and says:

## THE PARTIES AND JURISDICTION

     1.    This is an action for damages which exceed $75,000 exclusive of interest, costs, and attorney's fees.

     2.    **THE PLAINTIFF.**  The Plaintiff, KIMBERLY CONWAY, is sui juris and is a resident of Howell, New Jersey.  At all times material hereto, the Plaintiff was a passenger onboard the cruise ship operated by the Defendant Celebrity Cruises.

     3.    **THE DEFENDANT**. The Defendant, CELEBRITY CRUISES, INC (hereinafter referred to as CELEBRITY or Defendant or the cruise line), is incorporated outside of the state of Florida, but does business in the State of Florida, and at all times material hereto was and is doing business in Miami Dade County, Florida. At all times material hereto the Defendant owned and/or operated the cruise ship on which the subject negligence occurred.

1

4. **FEDERAL SUBJECT MATTER JURISDICTION**. Federal subject matter jurisdiction arises under and is by virtue of Diversity of Citizenship pursuant to 28 U.S.C. § 1332, as this is a civil action where the matter in controversy exceeds the sum or value of $75,000 exclusive of interest and costs, and is between citizens of different States and/or citizens of a State and citizens or subjects of a foreign state. This action also arises under and is by virtue of the admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333. Further, this action is being filed in Federal Court in Miami Dade County, Florida, as required by the venue selection clause in the Passenger Contract Ticket issued by the Defendant.

5. **VENUE AND PERSONAL JURISDICTION**. The Defendants, at all times material hereto, through agents or representatives, in the County and in the District in which this Complaint is filed:

(a) Operated, conducted, engaged in or carried on a business venture in this state and/or county; and/or

(b) Had an office or agency in this state and/or county; and/or

(c) Engaged in substantial activity within this state; and/or

(d) Committed one or more of the acts stated in Florida Statutes, Sections 48.081, 48.181 or 48.193.

6. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

**OTHER ALLEGATIONS COMMON TO ALL COUNTS**

7. **DATE OF THE INCIDENTS**. The incidents occurred on and after December 9, 2018.

8. **LOCATION OF THE INCIDENT.**   The incident occurred onboard the vessel CELEBRITY *Infinity*, a ship in navigable water while the Plaintiff was a passenger onboard.

Accordingly, the Plaintiff's claims are governed by the general maritime law. Specifically, the Plaintiff's incident occurred on the pool deck.

       9.      **STATUS OF PLAINTIFF AS OF DATE AND TIME OF THE INCIDENT.**

At all times material hereto, the Plaintiff was a passenger on the subject cruise ship described herein and, accordingly, was an invitee while on the vessel.

      10.      **DESCRIPTION OF INCIDENT.** Celebrity owes a duty of reasonable care under the circumstances. The circumstances giving rise to this cause of action are as follows. Celebrity custom built the Celebrity *Infinity* cruise ship in a shipyard in France. The Celebrity *infinity* is a cruise ship which Celebrity had custom built to specifications and designs which were made by or under the supervision and participation of Celebrity. The *Infinity* was designed by or at the direction of Celebrity's shoreside New Build and other shoreside departments. Celebrity employs architects, designers, and engineers. The ship was built in France at a shipyard under the constant supervision of Celebrity's onsite construction managers, designers, architects, and engineers. Under the contract with the shipyard, Celebrity has not only full access to the ship to inspect and the ability to inspect the designs used for construction, but also has the ability to reject and change any design or construction at the shipyard and for a period of time thereafter. Celebrity holds the ultimate control under their contract with the yard, if an item or design is rejected or at issue and not resolved, Celebrity can withhold payment. That includes the flooring materials and/or stairways which caused this fall and these injuries.

      11. The *Infinity* was delivered to Celebrity as finished on June 9, 2000. Celebrity has operated and maintained the ship continuously since that time. The Celebrity *Infinity* is a part of the *Millennium*-class cruise ships which includes the Celebrity *Millennium*, Celebrity *Infinity*, Celebrity *Summit*, and Celebrity *Constellation*. Celebrity has operated and maintained the other ships in the *Millennium*-class, listed above, continuously since the time when each of those ships

were first built and put into service. And Celebrity also custom built to specifications and designs which were made by or under the supervision and participation of Celebrity all of the *Millennium*-class ships, listed above. The design and construction of these ships was under the supervision and with the participation of Celebrity personnel who were stationed onsite in the shipyard during construction.

12. Celebrity provides open decks and/or open deck stairways on all Celebrity ships, including the Celebrity *Infinity*. Celebrity's open decks and/or stairways are busy gathering areas for passengers.  Celebrity's open decks are where Celebrity plans and organizes events, activities, dances; provides pools, jacuzzis, showers and spas and is a place for Celebrity's passengers to socialize, relax and enjoy food and drinks.  Celebrity knows that its passengers who use its open decks and/or open deck stairways repetitively drop food and drinks; drip and track water from its pools, jacuzzis, spas and showers; and are regularly cleaned by Celebrity crew members who spray and mop the decks and/or stairways.  Celebrity's open decks and/or stairways also get wet either from rain, ocean spray, humidity or Celebrity crew members when they spray the deck for its daily cleaning.  Because of all this activity and exposure to rain, ocean spray and humidity, Celebrity knows that it is important to keep open decks clean and dry at all times; to actively inspect for wet areas left by mopping, puddles or spills and to clean and dry them; and to do what it takes to prevent slips and falls.

13. Yet, Celebrity chose to install flooring materials on Celebrity's open decks and/or open deck stairways which can be extremely slippery when wet. Celebrity selected, designed and constructed the flooring materials installed in Celebrity's open decks including the *Infinity's* open deck areas on Deck 10.

14. Celebrity knows from years of experience with this flooring and multiple other slip and falls on this same type of flooring on all its ships that the flooring is slippery when wet.  Yet

Celebrity fails to inspect with sufficient regularity, fails to clean and dry with sufficient regularity, fails to block off wet and slippery parts of the flooring, fails to put down slip resistant mats and/or grips on the flooring, and fails to warn with sufficient signage.

15. The Celebrity *Infinity* has the capacity to hold 2,170 passengers. Celebrity knows that these passengers frequent the ship's open decks. For that reason, as Celebrity knows, it is extremely important to mop, clean and dry the floors and/or stairways.

16. Celebrity serve passengers food and drinks on its open decks. Celebrity also provides tables and chairs for passengers to enjoy their food and drinks. Celebrity provides pools, jacuzzis, showers and spas for its passengers. Celebrity's pools, jacuzzis and showers are open to passengers early in the morning through late at night, sometimes midnight. Celebrity knew or should have known that passengers repetitively get wet and drip and track water from the pools, jacuzzis, showers and spas throughout Celebrity's open deck and/or open deck stairway areas. Celebrity knew or should have known that passengers tracking and dripping water creates water accumulations on the open decks and/or open deck stairways. Celebrity also knew or should have known that its passengers repetitively walk between the bars, tables and chairs, walkways and outdoor stairway areas with these drinks. Celebrity knew or should have known that passengers repetitively drip and drop drinks causing liquids and ice to get on the flooring and/or stairways. Celebrity knew or should have known these sources of water accumulate and create puddles which are a hazard to passengers. Celebrity knew or should have known that crew members repetitively create wet areas on the flooring and/or stairways when mopping, spraying and otherwise cleaning the open deck flooring. This is an ongoing, continuous problem of which Celebrity is well aware.

17. Celebrity knows it must protect pedestrian traffic, by blocking off areas where liquids accumulate, cleaning and drying these areas, and warning people in other ways (i.e. using signs or people to warn passengers away from the mopped and/or sprayed area, cordoning off areas that

are in the process of being cleaned, or using blowers to dry the area). Celebrity knows that the open deck flooring and/or stairways experiences significant foot traffic, and thus Celebrity knows that its employees must take adequate safety measures to locate, warn, and remedy wet surfaces.

18. On December 9, 2018, Celebrity allowed passengers to traverse these areas dripping and tracking water from wet swimsuits, feet, shoes and drinks which accumulated and created a hazard to other passengers. Celebrity's employees knew about the deck on which the pool and other outdoor amenities exist and which most passengers visit at least once per day.   Celebrity's employee(s) used a mop to clean and dry the floor and/or stairways.  The Celebrity's cleaner(s) mopped but did not dry the floor and/or stairway.  The Celebrity cleaner(s) also failed to cordon off the wet floor and/or stairway or place any warning signs to warn passengers of the wet floor and/or stairway.  Accordingly, the floor remained wet and dangerous.  Celebrity allowed a large accumulation of water on its open deck and/or stairway to remain for an extended period of time which caused passenger Conway to slip and fall.  After the fall, Ms. Conway went to the cruise ship's infirmary for treatment of her injuries.

19. As a result of these unsafe conditions, passenger Conway slipped and fell and suffered severe and permanent injuries.  Conway suffered injuries including, but not limited a fracture of her first metatarsophalangeal joint, hallux limitus, and complex regional pain syndrome.  Ms. Conway required surgery which included the excision of her left first metatarsophalangeal joint fracture fragments and left first proximal phalanx and metatarsal head exostectomy.  These injuries are permanent and significantly affect the life and abilities of Ms. Conway.

### COUNT I:
### NEGLIGENT MAINTENANCE – VICARIOUS LIABILITY

20. The Plaintiff, KIMBERLY CONWAY, hereby adopts and re-alleges each and every allegation in paragraphs 1 through 19, above.

21. This is an action for negligent maintenance. The Defendant Celebrity is vicariously liable and responsible for the negligent acts of its shipboard crew members who were employees and/or actual agents of the Defendant. *See Franza v. Royal Caribbean Cruise Line, Ltd.*, 772 F.3d 1225 (11th Cir. 2014). The cruise line is vicariously liable for the negligence of its crew members. This ultimately is based on the fact that the crew members are employees of the cruise line. Therefore, under respondeat superior the cruise line is liable for the negligence of all crew members working aboard its ships.

22. **DUTIES OWED BY CELEBRITY**: Celebrity owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

23. Celebrity, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") Celebrity's open decks are escape routes that Celebrity knew or should have

known it must maintain in a safe, clear, clean and dry condition.  Celebrity, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Therefore, Celebrity knew or should have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn passengers of wet floors.  Upon information and belief Celebrity, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to maintaining safe walkways, staircases and floor materials.

24. Celebrity owes a duty as a common carrier to its passengers to maintain all areas of its ship, including the Celebrity *Infinity*. Celebrity owes a duty of reasonable care under the circumstances. The circumstances are as follows.  One of Celebrity's common areas are its open decks and/or outdoor stairways that Celebrity operates on every one of its ships. Celebrity hires and employs crew members who are responsible for reasonable maintenance of shipboard floor surfaces including those located on Celebrity's open decks and/or outdoor stairways. Celebrity provides its passengers entertainment, activity and events hosted by Celebrity personnel including on its open deck areas and/or staircases.  Additionally, Celebrity serves beverages to its passengers onboard its ships which passengers take with them when walking up and/or down Celebrity's outdoor stairways. Passengers repetitively spill, drip and track drinks and liquids as well as drip water from their wet swimsuits on the floor surfaces on Celebrity's open decks and/or outdoor staircases. Liquids accumulate on Celebrity's open deck floors and/or outdoor staircases from passengers repetitively spilling, dripping and tracking drinks and liquids on its floors.  Celebrity's crew members repetitively mop and spray down it's open deck floors, including the outdoor staircases. Celebrity's open decks and outdoor staircases are exposed to the elements and repetitively become wet from rain, ocean spray and humidity. This is an ongoing, continuous problem of which

Celebrity is well aware.  Celebrity employs crew members who must carefully and with enough regularity inspect and monitor its floor surfaces and clean up spills, water accumulations and puddles.  Because of all this activity within Celebrity's open decks and/or outdoor staircases, it is important to keep the floors on Celebrity's open decks and/or outdoor stairways clean and dry, actively inspect for spills, tracked liquids, rain water, sea spray and to clean them to prevent slip and falls.

25. As part of Celebrity's maintenance program when crew members mop and/or spray Celebrity's open deck and/or outdoor staircase floors, crew members must dry the floor or cordon off the wet area or put wet floor signs on the wet floors.  Celebrity crew members must carefully and with sufficient regularity inspect and monitor mopped floors in Celebrity's open decks and/or stairways to prevent slip and falls.  It is important to clean, dry, block off or warn passengers of wet floors on Celebrity's open decks and/or outdoor stairways to prevent slip and falls.

26. Because Celebrity's open decks and outdoor staircases are highly trafficked areas, Celebrity knows that it must maintain its floor surfaces in a condition that complies with applicable industry standards, statutes, and/or regulations.  Celebrity should comply with applicable industry standards, statutes, and/or regulations as part of its maintenance program to prevent slip and falls.

27. **CELEBRITY BREACHED ITS DUTY**:  Celebrity breached its duty of reasonable care owed to the Plaintiff under the circumstances. Celebrity breached its duty of reasonable care owed to the Plaintiff because Celebrity failed to maintain its open deck and staircase floors in a clean and dry condition.  Celebrity failed to inspect and monitor its open deck and/or outdoor stairway floors such that it could find water accumulations and wet areas in order to clean and dry the floors. Celebrity failed to inspect and monitor areas Celebrity crew members mopped and/or sprayed such that it failed to dry, cordon off or mark wet areas with warning signs. Celebrity's crew members failed to inspect and monitor for rain, sea spray and humidity on Celebrity's open deck and/or

outdoor stairway floors such that it failed to dry, cordon off or mark wet areas with warning signs. Celebrity failed to maintain its floors such that they comply with applicable industry standards, statutes, and/or regulations. Celebrity's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

28. **PROXIMATE CAUSE**: Celebrity's negligent acts through its employees occurred aboard the Celebrity's ship caused severe and permanent injuries to the Plaintiff on December 9, 2018. As a direct and proximate result of the negligence of Celebrity's employees as described above, the Plaintiff's severe and permanent injuries. Celebrity is liable for these damages alleged herein because of the respondeat superior relationship with Celebrity crew member employees as described herein.

29. **DAMAGES**: The negligence of Celebrity's crew member employees proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against Celebrity for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the

future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT II
## NEGLIGENT FAILURE TO WARN

30. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1- 19, above.

31. This is an action for negligence of Celebrity failing to warn passengers, including the Plaintiff, of its slippery floor surface on its open decks and/or outdoor stairways.  Celebrity's open deck and/or outdoor stairways floors repetitively get wet with liquids from spills and/or dripping of drinks, tracking of liquids by passenger foot traffic as well as from mopping and spray cleaning of floors by Celebrity crew members.  Celebrity's open decks and/or outdoor stairways are exposed to the elements and repetitively become wet from rain, ocean spray and humidity. Celebrity passengers repeatedly enter and exit Celebrity's pools, spas, jacuzzis and outdoor showers throughout the day and drip and track water throughout the open decks and/or outdoor stairways. Celebrity knew or should have known that the floor surfaces on its open decks and/or outdoor stairways are slippery when wet.  Wet areas can blend with Celebrity's open deck and/or outdoor stairways floor surfaces.  Celebrity passengers may not know how slippery its floor surfaces on its open decks and/or outdoor stairways can be when wet.  Therefore, Celebrity knew or should have known to warn its passengers that the floor surfaces in Celebrity open decks and/or outdoor stairways can be slippery.

32. **DUTIES OWED BY CELEBRITY**: Celebrity owes a "duty to exercise reasonable care for the safety of its passengers," including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited*, 2004 WL 1621209 (Fla. 3d DCA 2004). The Defendant also owes a "duty to

exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, 1991 WL 329584 (S.D. Fla. 1991). Additionally, the Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *See Vierling v. Celebrity Cruises, Inc.,* 339 F.3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *Carlisle v. Ulysses Line Limited*, 475 So.2d 248 (Fla. 3d DCA 1985).

33. Celebrity, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be provided."); <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition clear of obstacles.")  Celebrity's open decks and/or outdoor stairways are escape routes that Celebrity knew or should have known it must maintain in a safe, clear, clean and dry condition. Celebrity, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Therefore Celebrity knew or should have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn passengers of wet floors.  Upon information and belief Celebrity, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways, staircases and floor materials.

34. Celebrity owes a duty as a common carrier to its passengers of dangers known to Celebrity where Celebrity invites or reasonably expects passengers to go.  Celebrity owes a duty of

reasonable care under the circumstances.  The circumstances are as follows.  Celebrity encourages passengers to walk through, socialize, drink and eat, enjoy the views, attend activities, events and entertainment and other amenities on Celebrity's open decks and/or outdoor stairways aboard its ships.  It is expected that passengers including the Plaintiff, are going walk on Celebrity's open decks and/or outdoor stairways aboard Celebrity's ships including the *Infinity*.  Celebrity documents prior slip and falls, slipperiness, and water accumulations on its open decks and outdoor staircases in various ways which may include prior shipboard meetings; logs or databases of prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet; prior slip testing of the floor surface.  Celebrity also distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos.  Celebrity trains its crew members to warn passengers of wet floors by using wet floor signs, marking the area or blocking off the area to prevent passengers from walking on wet floors.

35. **<u>CELEBRITY BREACHED ITS DUTY</u>**: Celebrity breached its duty to warn the Plaintiff of dangerous condition on the open deck and/or outdoor stairway flooring. Celebrity breached its duties to the Plaintiff by its actions and conduct.  Celebrity through its crew members failed to place signs, stickers, lights, and other visual notices or written on or near the wet floor.  Celebrity and Celebrity's crew members failed to make audible announcements that the open deck and/or outdoor stairways floors are dangerous and can be slippery when wet. Celebrity's crew members failed to cordon off the open deck and/or outdoor stairways floors or place physical barriers on the floors or otherwise to prevent access to the wet floors.  Celebrity also failed to comply with comply with applicable industry standards, statutes, and/or regulations which invokes the Pennsylvania Rule and shifts the burden of proof to the Defendant in the proof of negligence or proof of the

absence of negligence. Celebrity's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

36. **<u>PROXIMATE CAUSE</u>**: Celebrity's failure to properly warn the Plaintiff of the dangerous wet floor surface proximately caused the Plaintiff's injuries.  Had Celebrity properly warned the Plaintiff of the dangerous condition of the wet floors, the Plaintiff would never have walked onto the floor surface.  The Plaintiff therefore would never have slipped and fallen onto the hard floor surface.

37. **<u>DAMAGES</u>**: Celebrity's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident

under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT III**
**NEGLIGENT TRAINING AND SUPERVISION OF PERSONNEL**

38. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-19, above.

39. This is an action for negligence due to Celebrity's negligent training of shipboard crew members. Celebrity owes a duty of reasonable care under the circumstances. The circumstances are as follows. Celebrity train its shipboard crew members to warn passengers that floors may be slippery when wet. Celebrity's open deck and/or outdoor staircase floor surfaces repeatedly get wet from passengers dripping or spilling drinks; passengers dripping and/or tracking water from pools, jacuzzis, spas and outdoor showers; crew member mopping and spray cleaning floors and rain, ocean spray and humidity which cause liquid accumulations on the floor. Celebrity train its crew members to inspect for wet areas and to clean and dry floors. Celebrity crew members clean and dry the open decks and outdoor staircases by using mops and water and/or spray cleaning. Celebrity train its crew members how to keep floors clean and dry. Celebrity train its crew members to keep the floors clean and dry in order to prevent slip and falls. Celebrity train its crew members to warn passengers, including the Plaintiff, of wet floors to prevent slip and falls. Celebrity train its crew members that passengers may not be able to see wet areas on its floors and that passengers may not know how slippery its floors may be when wet. Celebrity knew or should have known to train crew members to warn passengers, including the Plaintiff, that the floors surface on the open decks and staircases can be slippery when wet. Celebrity train crew members to maintain clean and dry floors on the open decks and outdoor staircases to prevent passengers, including the Plaintiff, from slipping and fall. Celebrity train its crew members to warn passengers

of wet floors and to keep the floors clean and dry.  Celebrity also documents prior slip and falls, complaints of slipperiness and water accumulations on the open deck and outdoor staircase flooring materials in various ways which may include logs or databases of prior slip and falls on Celebrity ships on the same or similar type of floor; Celebrity's shipboard meetings; prior complaints made to guest services throughout its fleet; prior slip testing of the floor surface. Celebrity distributes crew member training materials; other safety warning messages including those made through verbal announcement, newsletters and safety videos regarding its open deck and outdoor staircase flooring.  Celebrity knew or should have known the importance of training its crew members to warn passengers that the floors in its open decks and outdoor stairs are slippery when wet.  Despite knowing how and the reason why Celebrity should train its crew members to warn and maintain the floors in a clean and dry condition, Celebrity failed to do so.

40. **DUTIES OWED BY CELEBRITY**: Celebrity owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**."** *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for failing to train and supervise its shipboard crew members.

41. Celebrity, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  Celebrity's open decks and/or outdoor stairways are escape routes that

Celebrity knew or should have known it must maintain in a safe, clear, clean and dry condition. Celebrity, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Therefore, Celebrity knew or should have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn passengers of wet floors.  Upon information and belief Celebrity, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways, staircases and floor materials.  Celebrity therefore knew the importance and necessity to train and supervise its crew members to keep its open deck and staircase floors clean and dry.

42. Celebrity's duty to train its crew members to inspect and maintain the open deck and staircase floors in a clean and dry condition; block and/or cordon off wet floors and warn passengers that the open decks and outdoor staircases are slippery when wet, is part of Celebrity's duty of reasonable care under the circumstances. This duty requires Celebrity train crew members how to properly and appropriately warn passengers of wet floor; to inspect and maintain floors in a clean and dry condition; and cordon and/or block off areas with wet floors.

43. **CELEBRITY BREACHED ITS DUTY**: Celebrity breached its duty of care owed to the Plaintiff and was negligent by failing to reasonably train its crew members how to inspect for wet areas and puddles on a regular basis, maintain the open deck and staircase floors in a clean and dry condition, cordon and/or block off wet areas to prevent passengers from walking on wet floors and warn passengers the flooring can be slippery when wet.  Celebrity failed to comply with industry standards regarding how to train its crew members to inspect and maintain the flooring and warn passengers of wet floors and the dangerousness of wet floors. Celebrity's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

17

44. **<u>PROXIMATE CAUSE</u>**: Celebrity's failure to properly train and supervise Celebrity crew members proximately caused the Plaintiff's injuries.   Had Celebrity properly trained and supervised Celebrity's crew members how to inspect for wet areas and puddles on a regular basis, maintain the flooring in a clean and dry condition and warn passengers the flooring can be slippery when wet, cordon and/or block off areas with wet floors and warn passengers that open deck and staircase floors can be slippery when wet, the Plaintiff would never have walked onto the floor surface.  The Plaintiff therefore would never have slipped and fallen onto the hard floor surface.

45. **<u>DAMAGES</u>**: Celebrity's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future.  Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident

under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT IV
## NEGLIGENT DESIGN, CONSTRUCTION AND SELECTION OF MATERIALS

46. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-19, above.

47. This is an action for negligence due to Celebrity's negligent design, construction and selection of materials.  Celebrity owes a duty of reasonable care under the circumstances.  The circumstances are as follows.  Celebrity's *Infinity* was built in Chantiers de 'Atlantique shipyard in Saint-Nazaire, France.  The Celebrity *Infinity* was launched on June 9, 2000 and made its maiden voyage March 3, 2001.  Celebrity custom designed and custom built the *Infinity* to Celebrity's specifications which include Deck 10. Any refits, modifications and/or changes made to the Celebrity *Infinity* were made in accordance to Celebrity's custom designs and selection of changes and modifications of areas and features of the *Infinity*. At all times Celebrity had the ultimate control over the design and construction of the *Infinity*. Celebrity had the right to inspect both the designs on paper and the design and construction at the yard.  Celebrity had the right under its contract with the yard to approve or reject the design, construction and selection of all materials to construct all aspects of the *Infinity* including the flooring installed on the open decks and outdoor staircases.  Celebrity had the right to reject any and all items, designs and construction.  Celebrity holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved.

48. Celebrity also custom designed and built the entire *Millennium*-class ships.  The Celebrity *Millennium*-class ships include the *Millennium*, *Infinity*, *Summit*, and *Constellation*. Celebrity built the Celebrity *Millennium* at Chantiers de l'Atlantique shipyard in Saint Nazaire, France. The *Millennium* launched on November 7, 1999 and first maiden voyage was on July 1, 2000.  The

*Millennium* underwent repairs and/or modifications after suffering engine problems on August 9, 2013 and underwent refurbishment in early 2019 at Sembawang Shipyard in Singapore. Celebrity custom designed and custom built the *Millennium* to Celebrity's specifications including the flooring on the open decks and outdoor stairways. During refits, the changes and modifications to the Celebrity *Millennium* were made in accordance to Celebrity's custom designs and selection of changes and modifications of areas and features of the *Millennium*. At all times Celebrity had the ultimate control over the design and construction of the *Millennium*. Celebrity could inspect construction, items and designs and refuse to approve the design, construction and selection of all materials to construct all aspects of the *Millennium* including the flooring on the open decks and outdoor staircases. Celebrity holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved.

49. Celebrity built the Celebrity *Summit* at Chantiers de l'Atlantque shipyard in Saint-Nazaire, France. Celebrity launched the *Summit* on March 9, 2001 and went into service November 2001. Celebrity drydocked the *Summit* in March 2017. Celebrity custom designed and custom built the *Summit* to Celebrity's specifications including the flooring on the open decks and outdoor staircases. During refits and/or drydocks, the changes and modifications to the Celebrity *Summit* were made in accordance with Celebrity's custom designs and selection of changes and modifications of areas and features of the *Summit.* At all times Celebrity had the ultimate control over the design and construction of the *Summit.* Celebrity could inspect construction, items and designs and refuse to approve the design, construction and selection of all materials to construct all aspects of the *Summit* including the flooring on the open decks and outdoor staircases. Celebrity holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved.

50. Celebrity built the Celebrity *Constellation* at Chantiers de l'Atlantque shipyard in Saint-Nzaire, France.  Celebrity launched the *Constellation* on October 31, 2001.  Celebrity custom designed and custom built the *Constellation* to Celebrity's specifications including the flooring on the open decks and outdoor staircases.  During refits, Celebrity's changes and modifications to the Celebrity *Constellation* were made in accordance to Celebrity's custom designs and selection of changes and modifications of areas and features of the *Constellation*.  At all times Celebrity had the ultimate control over the design and construction of the *Constellation*. Celebrity could inspect construction, items and designs and refuse to approve the design, construction and selection of all materials to construct all aspects of the *Constellation* including the flooring on the open decks and outdoor staircases. Celebrity holds the ultimate control under their contract with the yard to withhold payment if an item or design is rejected or at issue and not resolved.

51. Celebrity maintains shoreside departments that are responsible for the design, selection and construction of Celebrity's ships.  Celebrity also maintains shoreside departments that are responsible for changes and modifications to the design, construction and selection of materials when Celebrity refits or modify its ships. These shoreside departments consist of naval architects, engineers, designers and other employees who are employed by Celebrity.  As such, Celebrity maintained the ultimate control over the design and construction of the *Millennium*-class ships including the *Infinity*.  Upon information and belief, Celebrity's contract with the shipyard allowed Celebrity to make progressive payments as work was completed. Celebrity's payment scheme allowed Celebrity the power and right to demand changes and modifications to the design, selection of materials and construction of the ship at any time.

52. Celebrity chose to create, design, and provide open decks and outdoor staircases for its passengers, including the Plaintiff, to travel between deck levels, spend time socializing, enjoying drinks and food, swimming in pools, relaxing in jacuzzis and spas, washing in showers, and other

amenities, activities and events planned, organized and provided by Celebrity.  Celebrity operates open decks and outdoor staircases aboard all of its ships, including the *Millennium*-class and *Infinity*.

53. Celebrity knew or should have known the design, construction and selection of flooring materials for its open decks and/or outdoor stairways was unreasonably dangerous.  Celebrity knew or should have known that Celebrity's design, construction and selection of the flooring materials on its open decks and outdoor staircases fail to comply with industry standards.

54. **<u>DUTIES OWED BY CELEBRITY</u>**: Celebrity owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**."** *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for negligently shipboard crew members.

55. Celebrity, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, <u>subpart 1.1</u> "safe escape routes shall be provided."); <u>subpart 1.2</u> ("escape routes shall be maintained in a safe condition clear of obstacles.")  Celebrity's open decks and/or outdoor stairways are escape routes that Celebrity knew or should have known it must maintain in a safe, clear, clean and dry condition. Celebrity, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Upon information and belief Celebrity tests the slip resistance of its flooring on a regular basis and

maintains internal policies and procedures regarding minimum standards for its floor surfaces slip resistance when wet and dry.  Therefore, Celebrity knew or should have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn passengers of wet floors.  Upon information and belief Celebrity, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways, staircases and floor materials.

56. Celebrity's duty to design, construct and select materials for all areas and features of its vessels, including the flooring on its open deck and outdoor staircases aboard the *Infinity*, is part of Celebrity's duty of reasonable care under the circumstances.  Celebrity had a duty design the flooring in a reasonably safe manner and in accordance with industry standards.  Celebrity's duty is part of its duty of reasonable care under the circumstances.

57. **<u>CELEBRITY BREACHED ITS DUTY</u>**:  Celebrity breached its duty of care owed to the Plaintiff and was negligent by failing to design, construct, select, approve and/or reject the flooring materials used on the open decks and outdoor staircases.  Celebrity failed to design, construct, select, approve and/or reject flooring materials that complied with industry standards.  The flooring materials Celebrity selected and used to construct the flooring on the open decks and outdoor staircases was unreasonably slippery when wet and dangerous.

58. Because Celebrity had the ultimate control over the design, construction and selection of materials for its ships, Celebrity could refuse to approve the design, construction and selection of materials used for the flooring on the open decks and/or outdoor stairways.  Celebrity knew or should have known about the dangerousness of the flooring.

59. Celebrity knew or should have known of the dangerousness of the open deck and/or outdoor staircases since the installation of the flooring on or before June 9, 2000 and/or any subsequent changes or modifications made to the flooring and/or stairways and/or any and all other

instances Celebrity made changes or modifications to the flooring.  Celebrity's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

60. **PROXIMATE CAUSE**: Celebrity's negligent design, construct and select materials proximately caused the Plaintiff's injuries.  Had Celebrity properly designed, constructed and selected the materials of the flooring on the open decks and outdoor staircases, the Plaintiff would never have walked onto the dangerous floor surface.  The Plaintiff therefore would never have slipped and fallen onto the hard floor surface.

61. **DAMAGES**: Celebrity's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life.  The losses are either permanent or continuing.  The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident

under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

**COUNT V**
**NEGLIGENT CROWD CONTROL**

62. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 1-19.

63. This is an action for negligence due to Celebrity's negligent crowd control.  Celebrity owes a duty of reasonable care under the circumstances. The circumstances are as follows.  The Celebrity *Infinity* has a capacity of 2,170 passengers. Celebrity's open deck and/or outdoor stairway areas are highly trafficked areas by its passengers and crew members.  Because of the high-volume traffic on the open decks and outdoor staircases it is important for Celebrity to control passenger foot traffic on its open decks and/or outdoor stairways. Due to the high-volume traffic, Celebrity's open decks and/or outdoor stairway floors repetitively get wet with liquids from spills and/or dripping of drinks, tracking of liquids by passenger foot traffic as well as from mopping and spray cleaning of floors by Celebrity crew members.  Celebrity's open decks and/or outdoor staircases are repetitively exposed to the elements and repetitively become wet from rain, ocean spray and humidity.  Hundreds if not thousands of Celebrity passengers repeatedly enter and exit Celebrity's pools, spas, jacuzzis and outdoor showers throughout the day and drip and track water throughout the open decks and outdoor staircases. Celebrity's floor surfaces on its open decks and outdoor stairways are slippery when wet.  Wet areas can blend with Celebrity's open deck and/or outdoor stairways floor surfaces.  Celebrity passengers may not know how slippery its floor surfaces on its open decks and outdoor staircases can be when wet.  Celebrity should warn its passengers that the floor surfaces in Celebrity open decks and/or outdoor stairways can be slippery. Celebrity documents prior slip and falls, complaints of slipperiness and repetitively wet floors on its open decks and outdoor staircases in various ways which may include prior shipboard meetings; prior similar incidents of slip and falls; prior complaints made to guest services throughout its fleet;

prior slip testing of the floor surface.  Celebrity also distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos regarding its open deck and/or outdoor stairways. Celebrity's negligent crowd control created a hazardous condition which caused the floor to become dangerously slippery when wet.

64. Celebrity either (a) created the dangerous condition, through its agents or employees; (b) had actual knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

65. **DUTUES OWED BY CELEBRITY**: Celebrity owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**.**" *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for negligently shipboard crew members.

66. Celebrity, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.")  Celebrity's open decks and outdoor staircases are escape routes that Celebrity knew or should have known it must maintain in a safe, clear, clean and dry condition.  Celebrity, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors.  Upon information

and belief Celebrity tests the slip resistance of its flooring on a regular basis and maintains internal policies and procedures regarding minimum standards for its floor surfaces slip resistance when wet and dry. Therefore, Celebrity knew or should have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn passengers of wet floors. Upon information and belief Celebrity, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways, staircases and floor materials.

67. **CELEBRITY BREACHED ITS DUTY**. Celebrity breached its duty of care by failing to control passenger foot traffic on its open decks and/or outdoor stairways. Celebrity breached its duty of care by failing to control passengers from dripping and tracking water and liquids from pools, jacuzzis, spas and outdoor showers throughout the open decks and/or outdoor stairways. Celebrity breached its duty of care by failing to control passengers from walking through areas with wet floors caused by Celebrity crew member mopping or spray cleaning as well as from rain, sea spray or humidity. Celebrity breached its duty of care by failing to prevent passengers from walking through areas Celebrity knew or should have known to be wet on its open decks and/or outdoor stairways. Celebrity breached its duty of care by failing to warn the hundreds if not thousands of passengers who traverse the open decks and/or outdoor stairways in writing, by warning sign or cone, audio announcement or other means that its open deck and outdoor staircase floors can be slippery when wet. Celebrity breached its duty of care by failing to comply with Celebrity's own standards on warning passengers of wet floors, cordoning off or placing warning signs on wet floors, verbally warning and/or instructing passengers not to walk on wet floors that can be slippery when wet and/or inspecting and maintaining open deck and outdoor staircase floors which Celebrity knew or should have known are used by large crowds of passengers. Celebrity's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

68. **PROXIMATE CAUSE**: Celebrity's negligent crowd control proximately caused the Plaintiff's injuries. Had Celebrity properly controlled Celebrity's crowds of passengers on the open deck and/or outdoor stairways, the Plaintiff would never have walked onto the dangerous floor surface. The Plaintiff therefore would never have slipped and fallen onto the hard floor surface.

69. **DAMAGES**: Celebrity's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

## COUNT VI
## NEGLIGENT FAILURE TO PROVIDE A REASONABLY SAFE SHIP

70. The Plaintiff hereby adopts and re-alleges each and every allegation in Paragraphs 19.

71. This is an action for negligence due to Celebrity's negligent failure to provide a reasonably safe ship. Celebrity owes a duty of reasonable care under the circumstances. The circumstances are as follows.  Celebrity's open deck and outdoor staircase floors repetitively get wet with liquids from spills and/or dripping of drinks, tracking of liquids by passenger foot traffic as well as from mopping and spray cleaning of floors by Celebrity crew members. Celebrity's open decks and/or outdoor stairways are exposed to the elements and repetitively become wet from rain, ocean spray and humidity.  Celebrity's passengers repeatedly enter and exit Celebrity's pools, spas, jacuzzis and outdoor showers throughout the day and drip and track water throughout the open decks and/or outdoor stairways. Celebrity's floor surfaces on its open decks and/or outdoor stairways are slippery when wet.  Wet areas can blend with Celebrity's open deck and/or outdoor stairways floor surfaces.  Celebrity passengers may not know how slippery its floor surfaces on its open decks and/or outdoor stairways can be when wet. Celebrity documents prior slip and falls, complaints of slipperiness and water accumulations on the same or similar type of floor where the plaintiff slipped and fell is slippery when wet based which may be documented in prior shipboard meetings; databases or logs of; prior complaints made to guest services throughout its fleet; prior slip testing of the floor surface. Celebrity distributes crew member training materials; safety warning messages including those made through verbal announcement, newsletters and safety videos regarding wet open deck and/or outdoor stairway flooring. Celebrity trains its crew members to warn passengers of wet floors by using wet floor signs, marking the area or blocking off the area to prevent passengers from walking on wet floors. Celebrity knew or should have known its open deck and/or outdoor stairways floors are hazardous when wet which make Celebrity ships unreasonably unsafe. Celebrity either (a) created the dangerous condition, through its agents or employees; (b) had actual

knowledge of the dangerous condition; and/or (c) had constructive knowledge of the dangerous condition.

72. **DUTUES OWED BY CELEBRITY**: Celebrity owes a "duty to exercise reasonable care for the safety of its passengers" including the Plaintiff herein. *See Hall v. Royal Caribbean Cruises, Limited* 2004 A.M.C. 1913, 2004 WL 1621209, 29 FLWD 1672, Case No. 3d03-2132 (Fla. 3d DCA Opinion filed July 21, 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances**."** *See Harnesk v. Carnival Cruise Lines, Inc,* 1992 A.M.C. 1472, 1991 WL 329584 (S.D. Fla. 1991). The cruise line is directly negligent for negligently shipboard crew members.

73. Celebrity, at all relevant times, was also under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty, including *Part C*, *Regulation 13*, subpart 1.1 "safe escape routes shall be provided."); subpart 1.2 ("escape routes shall be maintained in a safe condition clear of obstacles.") Celebrity's open decks and outdoor staircases are escape routes that Celebrity knew or should have known it must maintain in a safe, clear, clean and dry condition. Celebrity, at all times relevant, created its own internal policies and procedures to provide clean and dry flooring, cordon off and/or block wet floors, and warn passengers of wet floors. Therefore, Celebrity knew or should have known it must provide clean and dry flooring, cordon off and/or block wet floors and warn passengers of wet floors. Upon information and belief Celebrity, at all relevant times, knew or should have known of industry safety standards of ASTM International, ANSI, ISM Code and Regulations and other industry standards applicable to providing and maintaining safe walkways, staircases and floor materials. Celebrity therefore knew the

importance and necessity to train and supervise its crew members to keep its open deck and staircase floors clean and dry

74. **CELEBRITY BREACHED ITS DUTY**.  Celebrity breached its duty of care by failing to provide a reasonably safe ship.  Celebrity breached its duty of care by failing to inspect and maintain its open deck floors and/or outdoor stairways in a reasonably clean and dry condition. Celebrity breached its duty of care by failing to block off and/or cordon off wet areas on Celebrity's open decks and/or outdoor stairways to prevent passengers from walking on slippery wet floors.  Celebrity breached its duty of care by failing to design and select materials for its open deck and outdoor staircase floors which are reasonably safe when wet.  Celebrity breached its duty of care by failing to train and supervise its crew members to inspect, maintain, warn, cordon off and prevent passengers from walking on open deck and outdoor staircase floors which Celebrity knew or should have known are slippery when wet.  Celebrity breached its duty of care by failing to control crowds on its open decks and/or outdoor stairways which Celebrity knew or should have known passengers repetitively track and drip water throughout its open deck and/or outdoor stairways and repetitively spill and drop drinks.  Celebrity's violation of applicable and mandatory safety regulations and standards constitutes negligence *per se*.

75. **PROXIMATE CAUSE**: Celebrity's negligent failure to provide a reasonably safe ship proximately caused the Plaintiff's injuries.  Had Celebrity properly provided a reasonably safe ship, which includes Celebrity's open deck and/or outdoor stairways floors, the Plaintiff would never have walked onto the dangerous floor surface.  The Plaintiff therefore would never have slipped and fallen onto the hard floor surface.

76. **DAMAGES**: Celebrity's negligence proximately caused permanent injuries and damages to the Plaintiff in the past and in the future. Those injuries and damages include but are not limited to economic damages including medical, psychological, and other related expenses in the past and in

the future; household and other related expenses in the past and in the future; and past lost wages and compensation and loss of income earning capacity for the future. Those injuries and damages also include but are not limited to non-economic damages including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life. The losses are either permanent or continuing. The Plaintiff has suffered these losses in the past and will continue to suffer them in the future.

WHEREFORE, the Plaintiff demands Judgment against the Defendant for damages recoverable under the general maritime law and state law including but not limited to economic damages including medical, psychological, and other related expenses in the past and in the future; lost income in the past and lost income and earning capacity in the future; non-economic damages in the past and in the future including pain, suffering, disability, physical impairment, scarring, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life; all court costs, all interest due under the applicable law including interest from the date of the subject incident under General Maritime Law, and any and all other damages which the Court deems just or appropriate.

By: _____
**JOHN H. HICKEY, ESQ.** (FBN 305081)
hickey@hickeylawfirm.com
**SARAH A. LOBEL, ESQ.** (FBN 88716)
slobel@hickeylawfirm.com
**HICKEY LAW FIRM, P.A.**
1401 Brickell Avenue, Suite 510
Miami, FL  33131
Tel.: (305) 371-8000
Fax: (305) 371-3542
*Attorney for Plaintiff*